## ATTORNEY GENERAL, *ex rel.* CALEB CUSHING,

### *vs.*

## CHARLES LUM, Clerk of the Circuit Court of Dane county.

### APPLICATION FOR MANDAMUS.

The rules prescribed by the Supreme Court for the regulation of its own practice, as well as for the practice of the Circuit Courts, are the law of the land, and binding upon all courts, officers and parties, until altered or annulled by the Supreme Court, or the legislature.

So are the judgments and decisions of this court, and all officers and persons are required to yield obedience to them.

The opinions of this court upon the points in judgment, presented and passed upon, in cases brought here by writ of error or otherwise, are the law of the land until overruled, or otherwise annulled or modified, and inferior courts or tribunals are bound thereby.

Whenever a court of equity places property, which is the subject of litigation, in the possession of a person, and binds him to a profitable use of, and accountability for, the same, the court will protect him in his possession and proper use thereof.

The Eighth Rule of practice for the Circuit Courts in equity, prescribed by the Supreme Court, has the force of law, and defines the circumstances under which a person may be entitled to a writ of assistance.

This rule changes entirely the former practice of courts of equity, in regard to the mode of obtaining this writ.

The Eighth Rule above mentioned makes it the duty of the clerk of the Circuit Court to issue the writ of assistance in aid of an order of the court for the delivery or possession of property, when the same shall have been demanded or refused, and such demand or refusal shown to the *clerk* by affidavit.

The Eighth Rule leaves no discretion with the clerk to withhold the writ when the party shall have complied with the terms of the rule. Whenever there is an operative order or decree, for the delivery or possession of property, and a demand and refusal to comply with such order, verified by affidavit, the party entitled by such order to the possession may demand such writ of assistance from the clerk, and he is bound to issue it.

Application for a mandamus may be made to this court, either for an alternative writ, or for a rule to show cause why a peremptory writ of mandamus shall not issue.

The rule to show cause performs the same function as an alternative writ, though application, in the first instance, for an alternative writ is generally the preferable mode.

A judge of the Circuit Court may, under our statute, in vacation, grant a rule to show cause why a peremptory writ of mandamus should not issue, returnable to, and answerable in, this court.

Dec. Term
1853.

Attorney
General
vs.
Lum.

The statement of this case will be sufficiently observed in the facts set forth in the opinion of the court.

The return of the respondent states that at the April term of the Dane County Circuit Court, the solicitors of Cushing demanded of respondent a writ of assistance, which demand was in writing; that respondent presented the same to Hon. Levi Hubbell, judge of said circuit, together with the eighth rule of chancery practice, and asked of said judge for direction in the matter; that said judge informed respondent that he (the judge) should make some order in the case during the term, and that said judge did, then and there, verbally order the respondent not to issue said writ of assistance; that it was a matter exclusively with the court, and that the respondent, as clerk of said court, had nothing to do in the matter.

Respondent then informed the solicitors of Cushing that the court had ordered him not to issue said writ as asked for in the written demand, and also that the refusal to issue the same was by order of the judge of said Circuit Court.

The respondent further states, that said judge made an order on the 22d day of April, 1854, changing the possession of the property in this cause, which is made a part of this, his answer; and in view of all the surrounding circumstances of this case, the order of the circuit judge of Green county, giving Cushing possession; and the order of the judge of the Dane County Court, giving Hungerford possession; together with the recommendation of the judges of the Supreme Court that Hungerford be continued in the possession, and the reversal of the order of the judge of the Dane Circuit Court, changing the possession of said prop-

erty ; all of which said matters would appear to said respondent to be more properly within the province of the judge than the clerk of a court, and upon the state of facts above set forth, together with the application in this case, the respondent respectfully asks the judgment of the Supreme Court, and submits to their decision in the premises.

*McArthur & Bartlett,* for the relator cited *Burrill's Practice,* 172–4 ; *Tapping on Mandamus,* 62, 271 ; 2 *Alabama,* 519 ; *R. S., ch.* 84, § 40 ; *Howe et al. vs. Kane,* 2 *Chandler,* 222 ; *Edwards on Receivers,* 19–22 ; 2 *Meloy,* 81 ; 3 *Daniels' Chancery Practice,* 2046 ; 2 *Paige,* 438 ; 2 *Waterman's Eden on Injunctions,* 352 ; *Story's Eq. sec.* 835–836 ; 1 *Johnson's Ch.* 80–81 ; 3 *id.* 66, 123, 160. They further contended that the eighth rule of equity practice in the Circuit Courts gave to the relator a right to demand and have the writ of assistance, as applied for from the respondent.

*Knapp, contra,* cited *Const. Wis., Art.* 7, *sec.* 3 ; *Rev. Stat., ch.* 82, *sec.* 5, 6, 7 ; *ch.* 83, *sec.* 6 ; *ch.* 126, *sec.* 28 ; 3 *Black.* 110–111 ; *Tapping on Mandamus,* (*marg. p.*) 296 ; 10 *Mod. Rep.* 48 ; 8 *East.* 416 ; 6 *id.* 389 ; *Paine & Duer's Practice,* 692 ; 5 *Pet. Rep.* 190.

*A. L. Collins,* for respondent, contended that the clerk of the Circuit Court is not bound by the opinions of the Supreme Court, but only by the form and substance of the remittitur. That the effect of the Green county order was merely directory to the receiver ; that it had been executed, its force spent, and

DEC. TERM 1853.

Attorney General. *vs.* Lum.

Dec. Term
1853.

Attorney
General
*vs.*
Lum.
was *functus officio;* and cited 1 *Hopkins' Ch. Rep.*
422 ; 4 *Johnson's Ch.* 609 ; 2 *Barbour's Ch. Prac.*
405 ; 7 *Paige,* 513.

 *By the Court,* SMITH, J. This is an application for
a mandamus to the clerk of the Circuit Court of Dane
county, to command him to issue a writ of assistance
in the case of William S. Hungerford, against Caleb
Cushing and others.

 As this writ only issues to enforce a specific legal
right, and as the propriety of its issuing in this case
depends, and this application is based upon, an alleged
specific right already determined, the two justices
who have heretofore declined to sit in, and participate
in the case of Hungerford against Cushing, when the
rights of the respective parties touching the merits of
the controversy were to be determined, have not felt
justified in retiring from the bench on this occasion.
Besides, our duty on this application is not limited
merely to the allowance of process to enforce the
rights of a party, judicially ascertained, but to vin-
dicate the authority of this court, and to require
obedience to its process, rules, judgments and decrees.
The rules prescribed by this court for the regulation
of its own practice, as well as for that of the Circuit
Court, are the law of the land, and are binding upon
all courts, officers and parties, until altered by this
court or the legislature. *R. S., p.* 409. So are the
judgments and decisions of this court, and obedience
to, and conformity with them must be required of all
officers and persons, and we shall never hesitate to
put into operation all requisite process and proper
agencies to enforce their authority, and to ensure
their efficacy.

We wish it distinctly understood that we do not
attempt to determine, or pass upon, any of the merits
of the controversy between the parties in the origi-
nal suit, nor in any manner to pass upon the rights
of either, only as far as they are already determined
and decreed by the court in which that suit is pend-
ing, or by the Supreme Court.

From the affidavit of Arthur McArthur, Esq., and
the accompanying papers, it appears that at the time
of the filing of the bill in the case of Hungerford
against Cushing, the latter held the legal title and
was in possession ; that soon after, or at the time of
filing the bill, an injunction was allowed, and issued
against Cushing, restraining him from further inter-
fering with the property, and a receiver was appoint-
ed and took possession ; that on the 30th day of July,
1849, an order was made by the Circuit Court of
Green county, in which the cause was then pending,
by which it was ordered that Cushing, by himself, or
his agent, be let into possession, and that the receiver
deliver possession, &c. ; that on the 25th day of July,
1851, a final decree was pronounced by the Circuit
Court of Dane county, (to which the cause had been
removed,) in favor of Hungerford, under which, the
latter obtained possession ; that from this final decree
an appeal was taken to the Supreme Court, where it
was reversed, and the cause remanded to the Circuit
Court, with a recommendation that Hungerford be
continued in possession, until good cause should be
shown to the contrary.

Almost immediately afterwards, an order was
made by the Circuit Court of Dane county, continu-
ing Hungerford in possession, which was made with-
out notice to the opposite party ; that afterwards

Dec. Term
1853.

Attorney
General
vs.
Lum.

Cushing, by his solicitor, moved the Circuit Court for an order restoring the possession to him, and also made another motion to vacate the order continuing Hungerford in possession. Both these motions were denied, and Cushing appealed to the Supreme Court. In the Supreme Court, the decision of the Circuit Court, on both these motions, was reversed, and the Circuit Court was directed to vacate its former order, continuing Hungerford in possession. In the opinion of this court upon the appeal of the decision of the Circuit Court, denying the motion of Cushing to have the property re-delivered to him, the Chief Justice, who alone decided the case, says:

"This is an appeal from an order of the Circuit Court for Dane county denying a motion made by the defendant, Cushing, to have the mills and other property which are the subject of controversy in this suit, re-delivered to him, or for such further order as should be proper in the premises.

"It appears that when the bill in this case was filed by the complainant, the defendant, Cushing, was in the possession of the property, and that an order was made by the Circuit Court for the county of Crawford, where the suit was pending, appointing a receiver to take charge of it. Subsequently, after the cause had been removed to Green county, an order was made by the Circuit Court for that county, that the injunction which had been allowed, should be modified so as to let Cushing into the possession, he giving bonds in the sum of $7,500, conditioned, that he would not commit any waste, and that he would pay over all rents and profits by him received, if ordered so to do; and that he would abide the final order which the court should make therein; which bond

was executed and approved, and Cushing entered into

possession of the premises. Afterwards, (the cause having in the meantime been removed to Dane county,) a final decree was made in the case, by which, among other things, the property was decreed to the complainant. This decree was brought to the Supreme Court by appeal and reversed.

Before the appeal was taken, and while the decree was in force, the complainant, by virtue of it, obtained possession of the property, and the Supreme Court recommended that the complainant should remain in possession, until the Circuit Court should otherwise order, upon good cause shown, that the said complainant should no longer retain said possession.

" I do not think that the recommendation of the Supreme Court had the effect of an order continuing the complainant in possession. It was the mere expression of a desire or wish to the Circuit Court, to which the cause was remanded, to have the complainant continue in possession, by that court, until good cause was shown to the contrary ; and of this cause the Circuit Court was to judge in the first instance.

" It appears that after the cause was remanded to the Circuit Court, that court made an order *ex parte,* without notice to the defendant, that the complainant should remain in possession of the property until the further order of the court ; and he has continued in possession till the present time.

" This order was irregular for two reasons ; one is, that it is repugnant to the order made by the Circuit Court for Green county, which was not vacated or reversed, but was in full force ; the other is, that it was *ex parte* and without notice to the defendant, who should have had an opportunity to show, if he

H*

could, that good cause existed why the complainant should not remain in possession. *Rule 4, of Circuit Court in equity.*

"It is apparent, that Cushing was entitled to the possession, by force of the order made by the Circuit Court for Green county, upon the reversal of the final decree by the Supreme Court, as it had never been reversed, but was in full force, and that the making of an order continuing the complainant in possession, without vacating the previous one, which gave the possession to Cushing, was erroneous.

"But admitting that it was a valid order, still the court should not have denied the motion made in this case; the motion was for an order restoring the possession to Cushing, or for such order as should be proper in the premises, and the affidavits filed in support of the motion, show that the complainant is entirely insolvent and irresponsible."

This opinion of the Supreme Court, pronounced by the Chief Justice, would seem to be conclusive, as to the right here sought to be enforced. But it is contended that the opinions pronounced by the Supreme Court, are not of binding authority upon the Circuit Court, and it is intimated, that though inferior courts may treat such opinions never so contemptuously, yet the mere remittitur certified and transmitted by our clerk, is the only authoritative direction to the court below.

This is not the correct view of the law. It is not intended to be declared that all the reasoning, and instances of illustration, introduced in an opinion of this court, are to be adopted by inferior tribunals, from which cases, or matters may come here by appeal, writ of error, or otherwise; but it is insisted and de-

Dec. Term 1853.

Attorney General
vs.
Lum.

clared that the opinion of this court upon the points in judgment, presented and passed upon in cases brought here for adjudication, are the law of the land, until overruled or otherwise annulled, and that inferior courts and tribunals must yield obedience to the law thus declared. We should be unfaithful to the high trust committed to us, should we fail to discharge this solemn duty of enforcing the law in this respect, upon the faithful and complete execution of which, the most sacred and vital rights of the citizen must frequently depend ; and every inferior officer, judicial or ministerial, must know and be informed that such acquiescence and obedience will be rigidly exacted, and resistance will be most effectually subdued.

It is altogether unnecessary to discuss the question of the efficacy of the Green county order, so-called. We may well say of it, in view of the opinion of the court just quoted, *stare decisis*. But as the existence and operative character of this order have been somewhat called in question, in the argument, and its present force and efficacy been denied, it may not be inappropriate to say a few words upon that point, not by way of reviewing a former opinion of this court, or establishing its correctness, but for the purpose of vindicating the authority of its opinions, orders and decrees.

At the commencement of the suit, Cushing was in possession. By an order of the Circuit Court, possession passed from him to a receiver. By a subsequent order of the Circuit Court, the right of possession was adjudged to be in Cushing, and he was ordered to be let into possession upon certain conditions, with which he complied ; upon the compliance with which, the

DEC. TERM
1858.

Attorney
General
vs.
Lum.

receiver was ordered to deliver him possession of all the property which had come to his hands.

This order was two-fold : first, declaratory of the right of Cushing to the possession, on compliance with the terms of the order, and ordering that he be let into such possession ; and second, that so far as the receiver had interfered with his former possession, of which he had been deprived by the injunction, and the appointment of a receiver, he, the receiver, should restore all that he had taken, by virtue of such orders.

As respects the first branch of the order, we think that the possession was adjudged to Cushing, not only as against the receiver and Hungerford, but as against all others. The property had already passed within the jurisdiction and control of the court. The order was not merely re-investing Cushing with his original possession, but it imposed upon him such terms as the giving of security for its safe management, and accountability for its rents, and profits, &c., as made him the custodian of the court. The first branch of the order was therefore directed, not merely against, or to, the receiver, but was operative in respect to all parties to the suit, and to the whole world, while the property remained *pendente lite*, and the order unannulled.

The second branch of the order had reference, of course, to the receiver, because the court had theretofore taken into its own custody the property, and had made the receiver its custodian *pro tempore*, and this branch of the order was virtually but a mere delivery by the court to Cushing. In other words, it was but a transfer of the possession of this property from one custodian, under its bonds and control, to another,

whom it then placed under its bonds and control. A forcible disturbance of Cushing's possession, or ouster, while he was in possession under the bonds of the court, would have been as much a contempt of the authority of the court, as would have been that of the receiver, while in possession under the order and bonds of the court. The very fact of so modifying the injunction, and of imposing such conditions upon the possession of Cushing, conferred by the Green county order, was incompatible with the character of the possession which he held at, and before, the commencement of the suit, and made him the custodee of the court.

Dec. Term
1853.

Attorney
General
vs.
Lum.

But it is insisted that the Green county order was directed only to the receiver theretofore appointed ; that under it, Cushing obtained possession ; and upon such acquisition of the possession, the order was executed and its force spent. It will be remarked, however, that the order is continuous in its nature, and that the conditions on which it was to be executed imply, not merely the act of acquiring possession, but such a use of the property, and accounting for its rents and profits to the court, as import a guaranty of the court of its protection in the use and productive management thereof; for no court of equity will place property, the subject of litigation, in the possession of a person *pendente lite*, and bind him to a profitable use of, and accountability for, the same, without pledging to him the protection of the court in such possession and use. Were it otherwise, a court of equity would operate as a snare, instead of a forum, where the consciences of men are to be probed, and complete justice may assert its dominion.

On this branch of the case, it only remains to in-

Dec. Term 1853.

Attorney General vs. Lum.

quire whether the Green county order was in force at the time of this application. The opinion of this court, before quoted, distinctly asserts that it was in force, and we entirely concur in that opinion. The only possession acquired subsequent to the date of that order, was that of Hungerford, under the final decree of the Circuit Court of Dane county, which was reversed by the Supreme Court, to which an appeal from that decree was taken. Of course, all the rights which Hungerford acquired under that decree were annulled by its reversal. At the time of the rendition of that decree, Cushing was in possession under the Green county order, and was ousted by force of the final decree. If, then, the final decree ousted Cushing, by placing Hungerford in possession, its reversion would, *caeteris paribus*, dislodge Hungerford, and replace Cushing under the former order.

But the Supreme Court, on the reversal of the final decree, recommended that Hungerford should be continued in possession until cause should be shown to the contrary. This recommendation, in the judgment of this court, did not amount to an order. So thought the court below ; for almost immediately after the decision of the Supreme Court, reversing the final decree, the Circuit Court *made* an order continuing Hungerford in possession; which order was reversed by this court for the reasons given in its opinion. By the reversal of the final decree, therefore, Hungerford lost all rights acquired by it, and by the reversal of the order of the Circuit Court, made, as alleged, in conformity with the former recommendation of the Supreme Court, all pretence of right on his part to the possession vanished, and the adjudicated right of possession then stood upon the exssting Green county

order, which had never been in any manner revoked,
annulled, modified or superseded, except by the final
decree, reversed, as before stated.

The Green county order was that the defendant
Cushing, by himself or agent, be let into the posses-
sion of the property described in the bill of com-
plaint, &c.    Here, then, was a specific legal right, ju-
dicially determined.

The eighth of the Circuit Court rules, in equity,
prescribed by the Supreme Court, and which have
the force of law, prescribe the circumstances under
which a person may be entitled to a writ of assist-
ance, and by whom it shall be issued.

. This rule entirely changes the former practice of
courts of equity in regard to the mode of obtaining a
writ of this character.    Instead of requiring a special
order of the court for the issuing of it, the rule makes
it the duty of the clerk of the court to issue it in aid
of an order of the court, for the delivery or posses-
sion of property, when such delivery or possession
shall have been demanded and refused, and the same
shown to the *clerk* by affidavit.    There is no diserction
left with the clerk.    The rule is prescribed, not by
the Circuit, but by the Supreme Court.    It is the
mandate of the Supreme Court to the clerk of the
Circuit Court, to issue a writ of assistance under the
circumstances thereby prescribed.    Whenever there
is an operative order or decree for the delivery or
possession, and proof is made by affidavit, of a de-
mand or refusal, to obey the decree or order, the par-
ty has a right to demand of the clerk to perform the
duty prescribed to him by the rule, and to issue the
writ of assistance.    Nor is it in the power of the Cir-
cuit Court or Circuit Judge, while such order or decree

Dec. Term
1858.

Attorney
General
vs.
Lum.

is in force, to interpose his authority in defiance of a rule of court which the statute declares to be the law of the land. Nor is it any excuse on the part of the clerk for disobeying the requirements of the law, or the mandate of this court, that the Circuit Court, or Circuit Judge, may have directed him otherwise. The Circuit Court had the power, in a proper manner, to annul or modify the order for the delivery of possession, but no power to repeal or abrogate a rule which the statute declares shall have the force of law, until the same shall be amended or altered by the Supreme Court, or the Legislature; and whenever an officer or person shall refuse obedience to such rule, or to a mandate of this court, it becomes our duty to apply the proper means to vindicate the authority of the court, and maintain the supremacy of law.

The affidavits in this case, clearly show a demand in conformity with the order, and a refusal to obey; and it was then the duty of the clerk to perform the ministerial act of issuing the writ. This he refused, and so refusing, he should be compelled to perform his duty by any competent tribunal to whom application is made in the proper manner. It only remains to consider, whether or not this application for the writ of mandamus has been made in a proper manner.

The practice of this court, and of other courts, under statutes in every essential respect like our own, is either to apply to the court for an alternative writ in the first instance, or for a rule to show cause why a peremptory writ should not issue, which serves the purpose and performs the function of an alternative writ. Either practice is allowable, although doubtless

when the circumstances of the case will justify, the application for an alternative mandamus is the preferable mode.

But it is contended that Judge Larrabee had no authority to award this rule to show cause, &c., and that such rule can only be awarded by this court in term time. Such is undoubtedly the practice of the common law, and but for the positive provision of our statute, the proceedings of the relator would be irregular and utterly void.

It is not for us to inquire why the legislature made the provision which it has in the 28th section of chapter 126, of the Revised Statutes. It may be that it will much better serve the convenience of parties than the practice of the common law. Be this as it may, we cannot, if we desire, avoid a positive regulation of the statute. The chapter before referred to has reference to the remedy by quo warranto, and other matters, and was enacted to regulate the practice therein. The first section provides that information in the nature of quo warranto may be filed in the Supreme Court, and throughout the entire chapter reference is made to the practice in the Supreme Court. Not one word is said, nor an allusion made which in the slightest degree intimates any authority or jurisdiction in the Circuit Court to proceed by *information* in the nature of a writ of quo warranto. Although jurisdiction by the constitution, and another statute, is given to the Circuit Court of the *writ* of quo warranto, yet we are not aware of any statute which authorizes a proceeding in the Circuit Court by *information* in the nature of a quo warranto, and by chapter 126, section 28, that writ is abolished, and by the same section a circuit judge is authorized to

Dec. Term
1858.

Attorney
General
vs.
Lum.

"award a rule to show cause why an information should not be filed, or why a mandamus should not issue." By every acknowledged rule of construction we must regard this provision as applying to the practice of the Supreme Court, and as a mode prescribed by the law-making power to bring the subject matter and the parties before the court. Whether or not this provision might be extended, in aid of the jurisdiction of the Circuit Courts, we are not now called upon to determine; but we feel bound to recognize this mode of practice for this court as the declared will of the legislature, who have the right and power to prescribe it, and to yield to it a cheerful obedience. Nor can we regard the laws by which the organization and members of the Supreme Court have been changed, as repealing the statute above cited by implication, or as rendering it inoperative. It confers a specific power upon the circuit judges, who continue to hold and exercise all the power which they before held and exercised, except that they are no longer judges of the Supreme Court. But the power to award this rule is by no means incompatible with their functions as circuit judges, and we have neither the right nor the disposition to deny to them the powers which the Constitution and the laws expressly confer upon them.

It is sufficient to say of the order of the 22d of April, appointing a receiver, and vacating so much of the Green county order as was incompatible therewith, that it has been appealed from, and its force and operation have been thereby suspended.

Without, therefore, attempting to intimate whether the Green county order was right or wrong, just or unjust, we have no doubt that it was in full force as

against Hungerford and all others, at the time of the application to the respondent for the writ of assistance, and that the relator under the eighth rule before cited, was clearly entitled to the writ at his hands, and that he refused to perform his duty in refusing to issue it. A peremptory writ of mandamus must therefore be, and the same is hereby awarded.