PRINGLE vs. DUNN and others.    (Motion for rehearing.)

PRACTICE: REHEARING AFTER JUDGMENT.  *(1) General rule as to rehearing after judgment.  (2-4) Rehearing in this court, after judgment on appeal.*

1. The rule of law governing all the courts of this state, including the supreme court, is, that as to all matters on which the mind of the court did act, or is presumed from the record to have acted, in the rendition of a judgment, it is precluded from altering its decision at a subsequent term, except as authorized by statute or by general rules of practice established by this court, having statutory force.

2. The provision of sec. 38, ch. 125, R. S., empowering courts, at any time within one year after notice thereof, to relieve a party from a judgment rendered against him through his mistake, excusable neglect, etc., has no application to judgments of this court on appeals.

3. This court has no power to review its own judgments on appeals after the term at which they are rendered, unless the power is carried over to a subsequent term by motion for rehearing actually made within the rule, and brought to a hearing within the term at which it is made.  But this does not prevent the correction of mere mistakes in the entry of judgment.

4. Under ch. 264 of 1860 — which requires the clerk of this court to remit appeal papers to the court below within thirty days after judgment here on the appeal, unless this court directs them to be retained for the purpose of a motion for a rehearing, — jurisdiction here of an appeal ceases when the papers are so remitted; and it ceases at the end of the thirty days, even when the record is *not actually remitted,* unless it is retained here *by order of the court* under the statute.

APPEAL from the Circuit Court for *Milwaukee* County. In this action to foreclose a mortgage, the trial court having rendered a judgment in favor of all the defendants, this court, on appeal, at the January term, 1875, held that the mortgage was valid, though not so recorded as to constitute constructive notice, and that the defendants *Molloy** and Bartoz were chargeable with *actual* notice; and it reversed the judgment

---

* In the former report of this case, the name of this defendant is given in the form *Maloy.*

below as to them.   See 37 Wis., 449–468.   At the January
term, 1876, it appearing that the papers in the cause had nev-
er been remitted, this court, on *Molloy's* motion, directed its
clerk to retain them until further order; and on the 21st of
March, *Molloy* asked leave to file a motion for a rehearing as
to so much of the judgment as affected him.   In support of
this motion affidavits of G. C. Prentiss, Esq., and John T.
Clark, Esq., were read, the substance of which was, that said
Clark was a defendant herein, and the judgment of the trial
court in his favor was affirmed by the judgment of this court;
that *Molloy* took title from Clark, through a mesne convey-
ance; that Clark defended on the ground that he purchased in
good faith without notice of the mortgage in suit, and his
deposition showing that he so purchased, and also showing his
relation to *Molloy's* title, was read on the trial below, and was
included in the bill of exceptions on appeal to this court; but
that, through mistake and inadvertence, this deposition was
not mentioned in the printed case, and the relation of *Mol-
loy's* title to that of Clark was overlooked in the argument
here.   Circumstances explaining and excusing this oversight
are stated at length; and it is also stated that Mr. Prentiss'
attention was not called to the relation between *Molloy* and
Clark until a few days before this motion was made, and that
Mr. Clark had not been aware until some time in the same
month of the true state of the action, or that the facts as to
*Molloy's* title had not been presented to the court.

*I. C. Sloan,* for the motion, after commenting upon the
fact that the bill of exceptions in this cause shows a complete
defense in *Molloy's* favor, and insisting that the circum-
stances set forth in the affidavits fully explained and excused
the failure of counsel to present that defense properly to this
court in the first instance, and the subsequent delay in moving
for a rehearing, contended further, that the statute (Tay.
Stats., 1446) gives the court power, in case of a judgment
rendered against a party through his "mistake, surprise or

excusable neglect," to relieve him therefrom within one year after its rendition. *Butler v. Mitchell*, 17 Wis., 52. Until a decree is signed and enrolled, all matters are open; and if there be any error in the decree, the court should have an opportunity of amending it. *Buck v. Fawcett*, 3 P. Wms., 8, 241; *Bowker v. Hunter*, 2 Dick., 611. The appellate court does not lose jurisdiction of the cause until the remittitur is actually filed. 7 Paige, 108, 509; 52 N. Y., 653; 1 id., 239. Courts of equity should bend their rules for the sake of equity and justice. *Beach v. Fulton Bank*, 2 Wend., 225, 237. A court having jurisdiction to set aside a judgment has the right to give any less relief by which justice may be obtained, and by which the rights of a party in excusable default may be protected; and the mode of effecting this object is under the control and subject to the direction of this court. *McCall v. McCall*, 54 N. Y., 541. A court of chancery has power, even after enrolment, to open a decree regularly obtained by default, and to discharge the enrolment, for the purpose of giving the defendant an opportunity to make a defense upon the merits, where he has been deprived of such defense either by mistake or accident or by the negligence of his solicitor. *Millspaugh v. McBride*, 7 Paige, 509; *Tripp v. Vincent*, 8 id., 176; *Beekman v. Peck*, 3 Johns. Ch., 415; 1 Barb. Ch. Pr. (ed. of 1874), 367. Rehearings *in equity* rest in the sound discretion of the court. *Daniel v. Mitchell*, 1 Story, 198; 2 Dan. Ch. Pr., 1554–5; *Laud v. Wickham*, 1 Paige, 256; *Jenkins v. Eldredge*, 3 Story, 299. Rehearing cannot be had after the time for making the motion has expired, *and* the record has been regularly remitted; but the fact that the time is past is no sufficient reason for denying the motion where the record still remains here. *Ogilvie v. Richardson*, 14 Wis., 158; *Hopkins v. Gilman*, 23 id., 512. Relief is granted for the negligence, ignorance or fraud of the party's attorney (*Sharp v. Mayor*, 31 Barb., 584); for drunkenness of the attorney (7 Rob., 74); for sickness of the defendant

(*Luscomb v. Maloy*, 26 Iowa, 444); for sickness of defendant's wife, and much business of his attorney. *Hill v. Crump*, 24 Ind., 291.

In *Allerding v. Cross*, 15 Wis., 530, the judgment below was affirmed here November 1, 1861; motion for leave to file a motion for a rehearing was made February 11, 1862, and allowed March 15th, and the rehearing granted on the 1st of September following.

*E. Mariner, contra.*

RYAN, C. J.    There were numerous defendants in this cause, respondents in this court, and the record was voluminous and complicated.    The appeal was argued at the bar for some five days, early in the June term, 1874, and was decided the last of May in the January term, 1875.    The latter term was not finally adjourned until July; so that the time for moving for a rehearing under the rule expired in June, 1875.

The respondent *Thomas Molloy* now moves for leave to make a motion for rehearing.    And the only question on the motion is, whether such leave should now be given.    The merits of the appeal are not before us, as upon a rehearing, but only the question whether the appeal should be now brought again before us for rehearing.    And we take the occasion to say that parties failing to move in time for rehearing cannot, by a motion for relief from this failure, make an opportunity for themselves, as was done in this case against our protest, to argue the merits of the rehearing at the bar, which the rule prohibits when the motion is made in time. The argument of such motions, as of all motions, must be confined to the merits of the motions themselves.

We did not understand counsel for the motion as expressly relying on sec. 38, ch. 125, R. S., to aid the right to move for rehearing now, on the ground of the party's mistake, inadvertence, surprise or inexcusable neglect, in not making the motion in time.    But his argument indicated a reliance on that

section. It may be doubted whether any provision of the section was intended to apply to proceedings in this court within its appellate jurisdiction. Certainly the provision for relief against judgments for a year after notice of them, can have no application to judgments in causes which cannot remain in the court longer than thirty days, unless ordered by the court within that time to remain here for the purpose of immediate rehearing. On questions whether steps may be taken here *nunc pro tunc* in proper cases, however, we should be influenced by the statutory rule of relief, excusable neglect, etc. And we may say here that, if a motion for a rehearing of this cause should have been made by this respondent, he appears not only to have neglected to make it in due time, but to have neglected all inquiry or thought of the grounds of making it, all attention to the judgment which he asks to be reconsidered, for some nine months after it was rendered. Such long, passive inattention and indifference are surely neglect, but it would be difficult to consider it excusable. *Non dormientibus jura subserviunt*. The statute was not designed to license mere apathy in suitors. Assuming the error imputed to the judgment, such negligence, so persevering, appears to us gross and inexcusable.

The rights of the respondent making this motion were expressly passed upon by the court. *Pringle v. Dunn*, 37 Wis., 449. " It is well established by the rules of the common law, that a court has no power to review its own judgment of a previous term; that is, as to all matters on which the mind of the court did act, or is presumed from the record to have acted, in the rendition of the judgment, it is precluded from again acting, at a subsequent term, and changing its opinions or altering its decisions." *Ætna Co. v. McCormick*, 20 Wis., 265. This has been the constant rule in this state. See *Scheer v. Keown*, 34 Wis., 349, and several later cases. And this court forms no exception to the rule. *Hungerford v. Cushing*, 8 Wis., 324; *Hill v. Hoover*, 5 id., 386.

Courts can of course take power by statute to review their judgments at subsequent terms, as in certain cases by ch. 125, sec. 38, R. S., and by general rules of practice established by this court, having statutory force. *Att'y Gen. v. Lum*, 2 Wis., 507.

In this court, judgments within its appellate jurisdiction can be reviewed only upon rehearing granted upon motion made within the rule. The original rule (3 Pin., 494) did, and the present rule (3 Pin., 503) may, carry the right to move for rehearing over to the term succeeding the judgment. That works so far an exception to the general rule that this court cannot review its judgment at a subsequent term. But when motion for rehearing is not made within the rule, and even when made but not brought to a hearing at the term at which it is made, the court is powerless to review its own judgment. *Pierce v. Kneeland*, 14 Wis., 341. And so this court has no power to review its own judgments on appeals after the term at which they are rendered, unless the power is carried over to a subsequent term by motion for rehearing actually made within the rule. Of course this does not prevent the correction of mere mistakes in the entry of judgment. *Hill v. Hoover, supra.*

We were referred, on the argument of this motion, to several cases showing the practice of courts of original jurisdiction elsewhere. These have no application here. Since the argument, we have been referred to *Allerding v. Cross*, 15 Wis., 530. Nothing in the report of that case is in conflict with the views here expressed, or with the cases cited in support of them. But it is true, as counsel suggests, that it appears by the record of that case that the time for moving for rehearing under the rule expired within the term of the judgment; and that leave to make the motion was granted at a subsequent term. The report of the case, and the opinion on the rehearing, take no notice of the difficulty, which was greater than that which prevailed in *Pierce v. Kneeland*, re-

JANUARY TERM, 1876.            441

Pringle vs. Dunn and others.    (Motion for rehearing.)

ported in the preceding volume.   And the ruling, in view of
the difficulty, is so obviously in conflict with so many previ-
ous decisions against the power of the courts of this state to
review their judgments at a subsequent term, amongst the
rest, a very strong case decided at the same term and reported
in the same volume (*Spafford v. Janesville*, 15 Wis., 474),
that it appears evident that the point was wholly overlooked
in *Allerding v. Cross*.   The result is a latent inconsistency
between that case and all other cases in this court on the sub-
ject, previous and subsequent, which leaves it without author-
ity beyond the letter of the report.   On this question, it stands
like any other case which overlooks a point fatal to the deter-
mination.   Had the error by the record been disclosed by the
report, the uniform current of decision in this court leaves no
room for doubt that the case, so far, would have been over-
ruled long ago.

Before ch. 264 of 1860, we are not aware that any stat-
ute fixed the time for the remission of appeal papers from
this court to the courts below.   And this court appears to have
considered its jurisdiction over appeals to have continued, for
some purposes, so long as the record actually remained here.
*Hopkins v. Gilman*, 23 Wis., 512; *Esty v. Sheckler*, 36 id.,
434.   But the statute of 1860 requires the clerk of this court
to remit appeal papers to the court below within thirty days
after judgment here on the appeal, unless this court directs them
to be retained for the purpose of a motion for rehearing.
And when the papers are so remitted, all jurisdiction here of
the appeal ceases.   *Hopkins v. Gilman, Esty v. Sheckler,*
*supra*.

And we are obliged to hold that, even when the record is
not actually remitted, the statute takes away the jurisdiction
of this court over appeals after thirty days from judgment on
them; unless the record is retained here by order of the court
under the statute.   The statute itself regulates our jurisdic-
tion; not the compliance or noncompliance of the clerk with

its provisions. The mere omission of the clerk to remit the record, the mere accident that the appeal papers remain here notwithstanding the statute, cannot operate to continue the jurisdiction of the court against the words of the statute. We had occasion to examine this provision very fully in considering *Esty v. Sheckler*, and then came to this conclusion, although it was not necessary to express it in deciding that case. And for the purpose of facilitating motions for rehearing, we then gave general directions to the clerk to retain all appeal papers here for the full time allowed by the statute.

We must therefore hold that the court has lost all jurisdiction over the judgment on this appeal; and that we have no power to grant this motion, because it is made at a term subsequent to the judgment on the appeal, and after the time when the statute permits the record to remain here. If the judgment did injustice to the respondent making this motion, we deeply deplore that his own laches has left us powerless to correct it. The respondent was represented on the argument by two counsel of ability and learning. His case was specially presented orally and in a printed brief. All the points made for him were carefully considered and decided; and we have no doubt correctly. It is now claimed for him that another point should have been made on his behalf, which was overlooked by his counsel, and which rested on facts not appearing in the printed case. If that be so, we regret it on his account and on our own; but we cannot hold ourselves responsible for it. In the decision of causes before us, we must necessssarily depend largely on the presentation of them by counsel. The duties of the bar are almost or quite as essential to the intelligent administration of justice, as the duties of the bench. With all the aid we receive from the bar, we are barely able, by incessant labor, to keep the business of the court from running in arrear. We endeavor faithfully to investigate causes before us. If we find points not raised at the bar, we pass upon them. But if, as a rule, we should de-

cline all reliance on the investigations of counsel, and assume to wade through all the records coming before us for all possible points arising upon them, and so perform over again the duties of the bar, we should at once so far fail in our own duties as to delay justice, which would sometimes be equivalent to denial of justice. It is in part to save us from this overwhelming labor, that printed cases and briefs are required in every appeal. We must presume, as a rule, that counsel faithfully investigate and present the rights of their clients. And if parties claim to have suffered by mistake or neglect of counsel, and seek redress through the same or other counsel, they must do so with such diligence that they can overtake the jurisdiction of the court in the cause; so that they may be again heard, without overriding the rules of law which go to the peace of society by the final end of litigation. *Interest reipublicæ ut sit finis litium.* This may be a hard case. It is said that hard cases are apt to make bad law. It is a sore temptation to us in this case, if our judgment did the injustice to the respondent imputed to it. But we must administer the law on general principles, and dare not disregard them in hard cases. We have no plenary jurisdiction to bend the law to particular cases, or to administer justice outside of its ordained forms and proceedings, as counsel invoked us to do. All human judgments are fallible, but are none the less final. And it is better that occasionally a hard judgment should be final, than that all judgments following upon litigation should remain open to inquiry whether they be hard or not. In the nervous language of Dixon, C. J.: "If such a practice were tolerated, no one knows where it would end. Parties would never be secure in their rights, and judgments would be of as little account as the course of the wind." *Spafford v. Janesville.*

*By the Court.* — The motion is overruled.