HALLETT *against* HOLMES.

*Where a plea, at its commencement, purports to be an answer to the whole declaration, but answers only a part of it, it is bad.*

*Where the general issue is pleaded, and a special plea, to which there is a replication and a demurrer, and contingent damages are assessed on the trial of the general issue, and the demurrer is afterwards argued, the Court will not allow the party to amend the plea; otherwise, if the demurrer had been argued before the trial of the issue.*

*It seems, that if the holder of a note sue the maker, and issue is joined in the cause, and the plaintiff afterwards takes a relicta and cognovit, and gives the defendant a stipulation not to issue execution on the judgment to be entered upon the cognovit, until a certain day thereafter, before which day, according to the course and practice of the Court, he could not have brought the cause to trial and obtained a judgment, this is not such an indulgence or giving time to the maker as will discharge the endorser.*

THIS was an action of *assumpsit* on a promissory note made by *Joseph E. Haff*, the 26th September, 1818, payable to the defendant, ninety days after date, and endorsed by him to the plaintiff. The declaration contained a count on the promissory notes, and counts for money paid, laid out, &c. money lent, and money had and received, &c. The defendant pleaded, 1. *Non assumpsit*. 2. That the plaintiff ought not to have and maintain his action, &c. because, &c. that after an action was brought in this Court against *Haff*, the maker, and before this suit was commenced, the plaintiff, without the consent or knowledge of the defendant, substituted the following contract in the place and stead of the promissory note, and agreed with *Haff*, in consideration that he, the said *Haff*, would give to the plaintiff a *relicta* and *cognovit* in that action, he, the plaintiff, would give indulgence and further time of payment to the said *Haff*, of the said note, with the interest; and the defendant averred, that in pursuance of this agreement, and without the knowledge and consent of the defendant, the said *Haff* signed and delivered to the plaintiff, a *relicta* and *cognovit* in that action, for the sum due on the note, with interest, being 847 dollars and 47 cents; and the plaintiff, in consideration thereof, delivered to the said *Haff* an agreement and stipulation in writing, by which he gave indulgence and further time to the said *Haff* for the payment of the said moneys, &c. without notice to the defendant, from the 14th of *April*, to the 21st day of *October*, 1819, before which last mentioned day, the said *Haff* became insolvent, &c. and absconded from the state, &c. all which the defendant is ready to verify, &c. wherefore he prayed judgment, &c. The plaintiff *replied*, that the issue joined in the suit against *Haff* was an issue in fact, and triable only by a jury in the county of *Albany*, where the venue was laid, and that at the time of receiving

the *relicta* and *cognovit* mentioned in the said plea, such was

the state of the suit, that by the rules and practice of the Court, &c. the issue could not be brought to trial until the 5th day of *October*, 1819, and no judgment could have been obtained or execution issued, except by means of a *relicta* and *cognovit*, at any time before the 21st of *October*, 1819 ; and that the attorney of the plaintiff in that suit, in order to obtain a *lien* on the land and real estate of the said *Haff*, sooner than by the rules and practice of the Court, &c. could otherwise have been obtained, did receive the said *relicta* and *cognovit* on the 14th of *April*, 1819, and containing a proviso that no execution should be issued on the judgment to be entered up thereon, until the 21st of *October*, 1819 : and gave to the said *Haff* a receipt for the said *relicta* and *cognovit*, with a stay of execution, &c. averring that this was the only agreement made with the said *Haff*, and traversing several matters contained in the plea, and concluding with a verification, &c.

To this replication, the defendant demurred, and assigned causes of demurrer : 1. That it does not deny that issue was joined in the said suit against *Haff*, but to evade the force thereof, attempts to put in issue the venue laid, and time of trial, the time of judgment, &c., and the rules of the Court, and the statute, &c., all which matters are not necessary to be alleged, and which are no answer to the plea. 2. That the replication admits the receiving of the *relicta* and *cognovit*, and the agreement in writing, as alleged in the plea, but, nevertheless, traverses the inferences and conclusions of law arising from those facts. 3. That the replication admits the facts set forth in the plea, and, afterwards, traverses the same facts. 4. That the plaintiff traverses the whole matter of the said plea, and concludes with a verification, whereas the replication should have concluded to the country, &c.

The demurrer was submitted to the Court without argument.

SPENCER, Ch. J. delivered the opinion of the Court. The plaintiff takes an exception to the plea, that it purports to be an answer to the whole declaration, and is only an answer

NEW-YORK, to part.   If the objection is true, in point of fact, the law is
May, 1820. well settled, that the plea is bad. (1 *Saund.* 28. note 3. and
HALLET the cases there cited. 1 *Chitty Pl.* 510.) It is an esta-
v
HOLMES. blished rule, upon the argument of a demurrer, to give judg-
ment against the party whose pleading is first defective in
substance. The plea begins with an answer to the whole
declaration, but it confines the agreement set up to the giv-
ing a *cognovit* on the note only, and it does not go on to
state, that judgment was entered on that *cognovit;* it makes
no answer to the plaintiff's counts for money paid and laid
out, for money lent, or for money had and received. We
cannot know but that these counts embrace substantive and
distinct causes of action. The matter pleaded extends
only to the note, and leaves the other counts unanswered.
Had the plea begun only as an answer to part, and answer-
ed only a part of the declaration, the plaintiff must have taken
his judgment for the part unanswered, by *nil dicit;* but here
the defendant says, " that the plaintiff ought not to have, or
maintain his aforesaid action thereof against him, be-
cause," &c. thus beginning his plea to the whole cause of
action, and answering only to the first count. This objec-
tion is, therefore, fatal.

If the plea was good in substance in other respects, and a
meritorious plea, the Court would ordinarily give the party
leave to amend; but, it appears, that contingent damages
have been assessed on the general issue, upon an inquest at
the last *Rensselaer* circuit. In *Robinson* v. *Rayley,* (1 *Burr.
Rep.* 321.) a motion was made to withdraw the demurrers
and amend, after argument, and before judgment, and after
a trial and contingent damages. Lord *Mansfield* said, no
case of such an amendment after trial had been cited, and
that he took it for granted, none existed. Mr. Justice
*Denison* said, that where the demurrer is first argued, the
Court will give leave to amend; but there never was an in-
stance of amending an issue at law after a verdict had been
found upon issues in fact, and contingent damages assessed
on the demurrers.

Upon the merits of the case, it is unnecessary to speak;
but I have no hesitation in saying, that if we are to regard
the facts stated in the replication, as the real facts in the

case, there is no pretence for saying, that the plaintiff gave time or indulgence to *Haff*, the drawer of the note. It is not brought within the case of *English* v. *Darley*, (2 B. & P. 61.) There, the endorser having proceeded to judgment against the acceptor, and taken out execution, received a sum in part payment, and took his security for the remainder, payable in instalments; and it was held, that he was thereby precluded from afterwards suing the endorser. Lord *Eldon* said, " if a holder enter into an agreement with a prior endorser in the morning, not to sue him for a certain period, and then oblige a subsequent endorser in the evening to pay the debt, the latter must immediately resort to the very person for payment to whom the holder had pledged his faith, that he shall not be sued." This is not such a case; no delay was granted; and the confession of judgment was a benefit to the endorser, because, if entered up, it acquired a *lien* on the realty, and the only effect of the arrangement was, that the judgment was expedited.

Judgment for the plaintiff.

---

JACKSON, *ex dem.* RUGGLES, *against* MARTIN.

EJECTMENT for lands in *New Windsor*, in the county of *Orange.* The parties agreed upon the following case, with liberty to either party to turn the same into a special verdict. *Henry M'Neely* being seised of a large real estate, made his will, dated *August* 31, 1795, in which he devised, as follows : " As for that worldly estate, wherewith it hath pleased God to bless me, I dispose thereof as follows : *First,* I give and bequeath unto my loving wife *Sarah M.* any room in my dwelling house, that she may choose to live in, after my decease. I, also, give her one cow, and fodder and pasture for both summer and winter, *from my homestead*

Where a testator devised a farm and messuage to his son, without words of inheritance, or expressing the quantity of the estate devised; with the directions of the testator, to furnish his mother with firewood and grain of all sorts, for her comfortable support; and in case she should not choose to live in the dwelling house (included in the estate so devised) in the event of his son's marriage, that then he should build a house for her, on another part of the testator's land; this was held to be a charge on the *person* of the devisee, in respect to the estate devised, and that the devisee took an estate in *fee* by implication ; but without this *personal* charge, or had it been on the *estate*, the devisee would have taken an estate for life only.

*farm*, for and during her life. I also give her of the produce and profits of my said farm, in such proportion of either, so as to render her a comfortable support through life.

"I give and bequeath to my eldest son *David M'Neely*, in addition to what I gave him heretofore, five pounds, to be paid him out of my real estate. I give and devise to my second son, *Robert M'Neely*, 118 acres of land, to be taken off the southerly end of my homestead farm, including my dwelling house, and other improvements, to be cut off by a line running parallel to the southerly side of my said farm ; he complying with the following injunctions ; that is, he, my said son *Robert*, shall allow to his said mother any room in my said dwelling house, that she may choose to live in, and keeping for her one cow, summer and winter, and to furnish her with a sufficient quantity of firewood and grain of all sorts, for her comfortable support. He my said son shall also allow to my daughter *Ruth*, one other room in my said dwelling house, so long as she remains unmarried, and no longer. I further give and bequeath unto him my said son *Robert*, one sorrel horse which is now six years old ; but in case my said son *Robert* neglects or refuses to provide for his mother as aforesaid, or in case she should not choose to live with him, if he marries a wife, in that case, I order that he build her a house on that part of my homestead farm, that is hereafter devised to my fourth son *James M.* and to provide for her, as aforesaid, or otherwise, to pay her fourteen pounds yearly, and every year, during her natural life. I give and devise to my fourth son *James M.* the remaining one hundred acres of my homestead farm, lying between the one hundred acres I lately conveyed, by deed and gift, to my eldest son *David M.* and that first devised to my second son *Robert* ; the division to be made so between my said sons *Robert* and *James* as to include the island field in *James's* part, he paying the legacies hereafter named." The testator then gave personal legacies to his daughter *Ruth*, and added, "and it is further my will, that if my son *James M'Neely*, should die under age, not having lawful issue, in that case I give and devise his one hundred acres to my son *Robert M.*, and he to pay the legacy of one hundred

pounds to his sister as aforesaid. It is further my will, that
if my son *Robert M.* should die, not having lawful issue, in
that case I give and devise his one hundred and eighteen
acres to my son *James M.*, and he to provide for his mother,
in the same manner as *Robert* was to have done. What-
ever remains of my personal estate, after the death of my
wife, and after my just debts are paid, I give and bequeath
the same to my son *Robert.*" The testator died prior to
the year 1800. *Robert M.* leased the farm devised to him.
The widow of the testator died in *July,* 1813. On the 2d of
*October,* 1807, while the premises were occupied by the
lessee of *Robert,* he sold and conveyed the premises in fee
to *D. Stringham,* for three thousand dollars. *Ruth,* the sis-
ter, in *May,* 1812, also conveyed all her share or right in
her father's estate, to *S.,* who also purchased the premises
which were sold by the sheriff under a judgment and exe-
cution against *Robert* in 1811. *Stringham* conveyed the
premises to *George Monell,* who conveyed the same to *H.
R.,* who sold and conveyed them to the lessor of the plain-
tiff.

*James M'Neely* died under age, without lawful issue, and
*Robert* survived him, and died in *April,* 1814, without law-
ful issue.

*Betts,* for the plaintiff, contended, that *Robert M.,* the tes-
tator's second son, took an estate in fee under the will. It
is manifest, from the introductory clause, as well as other
parts of the will, that the testator intended not to die intes-
tate, but to devise his whole estate. (6 *Johns. Rep.* 191.
4 *Yeats's Rep.* 180. 1 *Dallas,* 226. 16 *Johns. Rep.* 537.) The
word estate is sufficient to carry a fee. But the testator
having imposed a charge on *Robert,* in respect to the estate
devised, which is personal, he must be considered as taking
a *fee* by implication. This is the settled law ; (8 *Johns. Rep.*
141. 10 *Johns. Rep.* 140. 6 *Johns. Rep.* 191. 5 *Bos. & Pull.*
430. 3 *Burr.* 1623. 5 *Term. Rep.* 13. 8 *Term. Rep.* 1.
*Cruise's Dig. Devise,* tit. 38. ch. 11. s. 49.) and it makes
no difference whether the charge is great or small.

*H. Bleecker,* contra, contended, that *Robert* took an estate

for *life* only, there being no words of perpetuity. (*Cruise's Dig. Devise,* tit. 38. ch. 11. s. 10. 16. 9 *Johns. Rep.* 222. 1 *Johns. Rep.* 198.) The introductory words to a will, are not, of themselves, sufficient to give a construction to it, unless the testator, afterwards, use words sufficient to carry his intention to dispose of all his estate into effect. (8 *Johns. Rep.* 144. 11 *East,* 219. 8 *Term Rep.* 54.)

Again; the charge upon *Robert,* the devisee, was not an absolute and certain charge on his person. The testator had before made the same provisions for the support of his wife, during her life, out of his estate, and he gives the part devised to *R.,* subject to the charge. The charge is on the testator's whole farm; not on the particular part devised to *R.,* (10 *Johns. Rep.* 148. 5 *Bos. & Pull.* 343.) Where it is *contingent,* whether the devisee will be liable to the charge, he takes only an estate for life. (8 *Johns. Rep.* 141. 2 *Atk.* 341. 6 *Co.* 16. *a. Dyer,* 371. *b.* 8 *East,* 141.)

Suppose, however, that these charges were sufficient to raise a fee by implication, the testator says, that if *Robert* dies without issue, then the estate devised was to go over to *James;* and *Robert* and *James* both died without issue. (3 *Burr.* 1623.)

