ALBANY,
Feb. 1828.

Sewall
v.
Fitch.

SEWALL and SEWALL *against* FITCH and GOODWIN.

An agent       ASSUMPSIT to recover damages for not delivering a
contracting to quantity of cut nails to the plaintiffs, pursuant to the de
buy goods for  fendant's agreement.
his principal is
a   competent    The cause was tried at the New York circuit, March
witness for the
principal in an 25th, 1826, before DUER, C. Judge, who sealed a bill of
action against exceptions at the request of the defendants, presenting the
the vendor for
the   non-de- following facts :
livery of the
goods, though    Greele, a commission merchant, not a broker, the au-
he did not dis- thorized agent of the plaintiffs, but without disclosing
close his agen-
cy at the time. their names, contracted for 300 casks of Thames manufac-
The rule that  tory cut nails, at 5 1-2 cents per pound, with a clerk of
a   memoran-
dum of a sale the defendants, in February, 1825. The clerk told him
of goods made
by  an agent the quantity was not then on hand, but that they could be
having merely soon knocked off or made, and be obtained from the manu-
parol authori-
ty, satisfies the factory at Norwhich, in the state of Connecticut, on the
statute    of  opening of the navigation. Greele told the clerk he wanted
frauds, means
[*216]       *the nails to supply an order. Greele, being introduced
that he should
be an auction- as a witness for the plaintiffs, and objected to as incompe-
eer, or broker, tent, swore to the above facts on his *voire dire ;* and also
or other agent
of both parties, that he considered himself personally bound to make good
not the mere the contract, and give his own notes if required. That he
agent of the
vendee, or the immediately reduced the agreement to writing, and sent it
agent of either
party   singly. to the plaintiffs. That he acted for their benefit solely,
E. g. a   com- and had no interest in the contract.
mission   mer-
chant author-    The judge held him competent ; and, being sworn in
ized to buy
goods in behalf chief, he repeated the above facts ; and *other witnesses*
of a distant were sworn for the plaintiffs, who differed from Greele in
correspondent.
And see *Dix*- some particulars, not otherwise material than as the differ-
*son* v. *Bloom*-
*field,* cited from ence might affect his credit with the jury. It appeared,
2 Chit. Rep. farther, that after the bargain, Greele disclosed the name
205, note(a) to
this case, as to of his principals to the defendants ; and that the memo-
a   memoran-
dum of guar-
anty made by an agent. The statute requiring a memorandum, &c., of goods sold above
the value of $25, means goods *in solido.* It extends both to contracts executed and execu-
tory for the sale of such. But where the goods are yet to be manufactured, or any labor
performed about them, the contract is, more properly, for work and labor and materials to
be found ; and, though by parol, is not within the statute.

randum of the contract made by him was lost. That at the time of the contract, the defendants were known to the plaintiffs to be the agents of the Thames company, who were to furnish the nails.

The defendants moved for a non-suit; but the judge decided that the memorandum took the case out of the statute of frauds; and that there was sufficient evidence of the contract to go to the jury. He charged that though the defendants were known to the plaintiffs as agents of the Thames company, yet, if they dealt in the transaction as principals, the action was well brought against them. That the memorandum was sufficient to take the case out of the statute of frauds; and the questions for the jury were, whether the contract with the defendants was proved; and the amount of damages. The defendants excepted to the decision and charge of the judge. Verdict for the plaintiffs, of $500.

*H. W. Warner*, now moved for a new trial. He said the defendants were known agents, and acted as such. The action should have been brought against their principals.

Greele was an incompetent witness. (1 Phil. Ev. 100. 3 Stark. Ev. 1620.) In *M'Brain* v. *Fortune*, (3 Campb. *317,) it was held that, in an action for goods sold, a person who entered into a contract for the purchase of the goods in his own name, is not a competent witness, to prove that he purchased them as the agent of the defendant.

[*217]

Here was not a sufficient note in writing to satisfy the statute of frauds. (15 East, 103; 6 East, 408.)

*J. Platt*, contra. There is nothing taking this case out of the general rule, that an agent is a competent witness for his principal. (Pal. on Agency, 279.) *M'Brain* v. *Fortune* was an action against the vendee: and the vendor called the agent. Clearly that case does not apply.

The defendants were liable personally, though agents or factors, their principals residing in a foreign country. To exempt themselves, they should have expressly insisted on

not being bound. Otherwise, the inference is, that credit was given to them. (2 Liv. on Agency, 247; Pal. on Agency, 289; 13 John. 58, 77; 4 Stark. on Ev. 1620.)

The contract is not void within the statute of frauds. Here was a written memorandum made by a competent agent. (7 Mass. Rep. 44; 5 Wheat. 326; 12 John. 102; 14 John. 484.) Beside, the nails were not yet manufac- tured. Goods, about which labor is to be performed to fit them for the sale, are not within the statute. (18 John. 58; 1 Str. 506; 4 Burr. 2101; 7 T. R. 14.)

The finding of the jury is conclusive, on the question whether the defendants intended to make themselves liable.

*Curia, per* SAVAGE, Ch. J. That the defendants, although agents for the Thames company, might contract on their own account, there can be no doubt; and the verdict of the jury has so found that fact. Whether the verdict be against evidence, is not a proper question upon this bill of exceptions. It must, therefore, stand, unless the judge er- red in some of his decisions, which were excepted to.

To the competency of the witness, Greele, there is no objection, except his interest, and the question I appre- hend, is not whether he might be interested in the con- [*218] tract *when made; but has he an interest in the event of this suit? That he could have no possible interest, I think is apparent. Those whom he represented, and on whose behalf his interest, if any, arose, affirmed the con- tract. If they recover, the witness makes nothing: if they fail, he loses nothing. Had the parties been reversed, per- haps it would have been different. Then, indeed, it might have been said, as in *M'Brain* v. *Fortune,* that if his prin- cipals were not bound, the agent would be. But that is an objection which cannot exist in the present suit.

The only question then, is, whether the contract was obligatory upon the defendants, within the statute of frauds; or as being a case not reached by that statute.

If this were a contract of which a note or memorandum in writing was necessary, to make it obligatory, it is clear to my mind, that no such memorandum was made as the

statute contemplates.  It requires,  " that some note or me- <span>ALBANY, Feb. 1828.</span>
morandum in writing of the said bargain be made, and
signed by the parties to be charged by such contract, or <span>Sewall v. Fitch.</span>
their agents thereunto lawfully authorized."  Greele, in
this case, was not the agent of the defendant, any more
than the plaintiffs would have been.  He was neither an
auctioneer nor a broker.  Nor had he any authority what-
ever from the defendants to make a note or memoran-
dum.(a)

*But, in this case, no memorandum at all was necessary.     [*219]
The contract was not for the sale of goods then *in solido*;
but for work and labor, in part, in the making of the arti-
cles to be delivered.  A distinction in such cases is well
settled, both in England and in this state.  Formerly, the
king's bench held that the statute did not apply to ex-
ecutory contracts.  (*Towers* v. *Osborne*, 1 Str. 506;  *Clayton*
v. *Andrews*, 4 Burr. 2101.)  In neither of those cases, how-
ever, was it necessary to rely upon such a principle.  The
first was for a coach, to be made;  and the second for grain
yet to be threshed.  So that those cases were rightly de-
termined, though upon a wrong principle, as has since been
held, both by the common pleas and king's bench.  In *Ron-*

(a) So, on another branch of the statute:

In *Dixon* v. *Broomfield*, (2 Chit. Rep. 205,) Parke moved to set aside a
non-suit.  The action was brought on a guaranty, in a note addressed to,
and left at the plaintiff's;  which stated that "Mr. Broomfield called to say
that he will be responsible for goods delivered to Mr. H."

This was written by the clerk of the plaintiff, in the presence of the de-
fendant.

Lord ELLENBOROUGH, C. J.   Was there any evidence that the defendant
assented to it?

PARKE.  Yes.

BAYLEY, J.  Had he signed it?

PARKE.  No.

Lord ELLENBOROUGH, C. J., said, that if this was evidence, no one could
safely go into a shop;  for any person there might write down a guaranty
upon which he might be made liable to a large amount.

Rule refused.

*deau* v. *Wyatt*, (2 H. Bl. 63,) Lord Loughborough said, "The case of *Towers* v. *Osborne*, (1 Str. 506,) was plainly out of the statute, not because it was an executory contract, as has been said, but because it was for work and labor to be done, and materials and other necessary things to be found, which is different from a mere contract of sale, to which species of contract alone the statute is applicable." The same point was so decided in *Cooper* v. *Elston*, (7 T. R. 14,) where the king's bench adopt *Rondeau* v. *Wyatt*, as sound law, admitting the distinctions there taken.

The principle of these two cases has been adopted by this court in *Bennett* v. *Hull*, (10 John. 364,) and *Crookshank* v. *Burrell*, (18 John. 28.) The contract, in this case, was for the delivery of nails thereafter to be manufactured. It was therefore a contract, within the decisions cited, for work and labor and materials found; and so out of the statute.

I am of opinion that Greele was a competent witness, having no interest in the cause. That the contract was a valid one; and of course that the plaintiffs are entitled to recover. The motion for a new trial must be denied.

New trial denied.

---

[*220]    *DE MOTT and BILLSON *against* WM. HAGERMAN and J. HAGERMAN.

Land being let on shares, the lessor and the lessee are tenants in common of the crop.

Where one enters and ousts the owner of land, continuing ·in possession, and occupying it, and cutting and removing off the crops, though they were sown by the owner, yet replevin will not lie for the crops so removed. The only remedy is by action of trespass *quare clausum fregit* after regaining possession by ejectment, or *semb.* by re-entry without ejectment.

REPLEVIN for wheat and rye; tried at the Seneca circuit, in June, 1827, before THROOP, C. Judge, when the following matters were in evidence:

Sealed articles of agreement between the plaintiffs, dated April 1st, 1824, containing these words: "John De Mot' agrees to let said Billson work a part of his farm, &c. Billson to work such part of the farm as De Mott shall or may direct, to put all grain in, in good order, to find