*Twenty-first Judicial District.*

# In the Court of Common Pleas of Schuylkill County.

THE COMTH., *ex rel.* J. H. GRIER *v.* H. N. COXE *et al.*

The statute of amendments should be liberally construed, and applies to proceedings in mandamus.

Mandamus is the proper remedy to compel inspectors, appointed to hold the election for directors of an incorporate company, to receive and count the votes by proxy, of policy-holders of the company, which have been rejected without sufficient reason.

The duties of such inspectors are purely ministerial, not judicial or deliberative.

A return to an alternative mandamus should set forth the facts *in extenso*, to enable the court to determine the law; not inference or conclusions, nor should a return be evasive, argumentative, multiform or ambiguous.

A by-law adopted by the board of directors, attaching conditions to the right to vote by proxy not required by the charter, is void, if done without consent or notice to policy-holders.

Mandamus.

Opinion delivered March 10, 1873, by

WALKER, J. A petition was presented on the 13th of January, 1873, in the above case, praying the court to issue a mandamus to the defendants above named, inspectors appointed to hold the annual election for directors of the Pennsylvania Central Insurance company, commanding them to suffer and permit James H. Grier, the relator, to vote on certain proxies, amounting to over one hundred, of policy-holders in said company, directed to him and authorizing him to vote in their stead for certain directors, and to count the votes thus received. The petition was verified by oath, and the writ was served the same day by the sheriff on the defendants. The petition was afterwards amended by leave of court, and filed *nunc pro tunc*, and sets forth specifically that the company was incorporated by the act of the 27th of December, 1871, Pamph. Laws 1872, p. 1385, that said company was duly organized and have been doing business for the last year in accordance with the provisions of their charter, &c.; and that on the 13th of January, 1873, the defendants, inspectors appointed to hold said annual election, refused to receive the proxies of policy-holders held by the relator.

A return was made to this by the defendants, and also afterwards a demurrer was filed by leave of court *nunc pro tunc*. The commonwealth then filed their demurrer, and the joinder of defendants completed the pleadings.

The return of the defendants sets forth that the relator is not entitled to the writ, for the following reasons: 1. That the inspectors are invested with full power to decide upon the qualifications of voters, and that they have refused the alleged proxies offered. 2. That the relator, if entitled to any relief, has an adequate remedy at law. They further say, that he offered to vote upon certain alleged proxies produced by him, and that they were rejected, because they were not properly executed and attested

in accordance with the by-laws; and that there was no proof that the signatures were genuine. They further say, they are informed and believe that James H. Grier procured the illegal proxies through false representations and improper means, and that it would be detrimental to the interests of the company to permit him to vote; and that they refused to let him vote after the writ had been served. This return is verified by oath. The by-law alluded to, was passed the day of the election, and required the proxies to be in form of a power of attorney, acknowledged before a justice of the peace, and attested by the secretary of the company. By the provisions of the act of the 21st of March, 1806, § 6, (4 Smith's Laws 529, Purdon's Dig. 68, headed amendments), it is provided "that in all cases where any suit has been brought in any court of record of this commonwealth, the same shall not be set aside for informality, if it appear that the process was issued in the name of the commonwealth against the defendant for moneys owing or due, or for damage by trespass or otherwise, as the case may be; that the process was served on the defendants by the proper officer and in due time; nor any plaintiff non-suited for informality in any statement or declaration filed, or by reason of any informality in entering a plea: but when, in the opinion of the court, such informality will effect the merits of the case in controversy, the plaintiff shall be permitted to amend, &c." The act has been liberally construed by the courts, to prevent litigation and delay, and the authorities fully justify the court in allowing the amendments asked for. See the reference in the foot notes, 1 vol. Purdon's Dig. p. 68. See Keasy *v.* Bricker, 10 P. F. S. 9, as to "*amended bill.*" See Supervisors *v.* Durant, 9 Wall 736, as to amendments *nunc pro tunc.* The relator may amend, State *v.* Hasling, 10 Wis. 518. The writ may be amended after return and demurrer, People *v.* Baker, 35 Barbour 105.

We purpose to discuss this subject under two general heads: 1. As to the right of the relator to have the writ directed to the defendants as inspectors, to receive and count the votes of the policy-holders whose proxies he holds. 2. As to the sufficiency of the pleadings and the judgment of the court. Under the first part, we will examine the objection raised by the respondents: 1. That the writ was not issued in open court. 2. That no peremptory writ can issue in the first place. 3. That the plaintiff has an adequate legal remedy at law. 4. That the defendants acted in a deliberative and judicial capacity, and the court has no power to direct them *how* to decide. The modern writ of mandamus is a high prerogative writ, not a writ of right, and is a writ of restitution of the most extensive and remedial nature. It is founded on *Magna Charta,* and introduced to ampliate justice. It is used to redress a legal right or duty, for which the law has established no specific or adequate legal remedy. Tapping on Mandamus 58. It lies to all inferior tribunals, magistrates and officers, and extends to all cases where there is a neglect of legal duty and no other adequate remedy. If the duty is judicial, it lies to the officers

to exercise their *official discretion* or *judgment*, without any direction as to the manner it should be done. If ministerial, it will direct the specific act to be done. *Ibid* 225. Carpenter *v.* County Commissioners, 21 Pick. 259. It is the proper process for restoring a person to an office from which he has been unjustly removed. White's Case, 2 Ld. Ray. 959–1004. Regina *v.* Baines, 2 Ld. Ray. 1265. Rex *v.* Chancellor of Cambridge, 2 Ld. Ray. 1334. Rex *v.* London, 2 T. R. 177. Rex *v.* Field, 4 T. R. 125. It lies to admit one to an *office, a service or a franchise,* from which he is unlawfully excluded. 6 Danes Abr. 326 ; Rex *v.* Sergeons Co., 2 Burr 892 : Rex *v.* Barker, 3 Burr 1265 ; S. C., 1 W. Bl. 300 ; Rex *v.* Bedford, 6 East 356; Rex *v.* York, 4 T. R. 699, 5 T. R. 66. The first objection is, that the writ cannot issue except in open court. The words of the act of 14th of June, 1836, under which this writ issued, are : " The several courts of common pleas, the president judge being present, shall, within their respective counties have the like power with the supreme court to issue writs of mandamus ;" and it is decided in Smith *v.* The Commonwealth, 5 Wright 335, that the additional law judge has power to issue the writ, although the president judge be not *present.* All of the pleadings, the return, demurrer and joinder in this issue, the amendments, motions and arguments, were in open court, everything in fact, but the issuing of the preliminary writ. The same objection, and with equal propriety, may be taken to the granting of an injunction, except in open court, under the several acts of assembly conferring upon the courts chancery powers. It might just as well be made to a rule to show cause why the writ should not issue, for this can be done without the seal of the court. Taylor *v.* Henry, 2 Pick. 398 ; Atty. Genl. *v.* Summ, 2 Wis. 507. Counsel have failed to cite a single authority or give a reason to sustain this position. We recognize no force whatever in this position.

2. The next objection is that no peremptory writ can issue in the first place. The 18th and 19th sections of the act of 1836, before cited, refers to the granting of a mandamus. The 20th section relates to the return to the first writ, and the 28th section provides for a peremptory writ of mandamus. The ordinary practice is to award an alternate mandamus, and the respondents to show cause by making a return to the writ, which is the beginning of the pleadings. Keasy *v.* Bricker, 10 P. F. S. 9. In the discretion of the court it may be regarded as a rule to show cause, and it has been so regarded in this case. Whether there may be any exception to this rule upon some great and sudden emergency, *dubitur.* But that is not this case, and the position of the defendants is correct.

3. That the plaintiff has an adequate legal remedy, and therefore mandamus writ will not lie.

Judge Yeates, in the Commonwealth *v.* Rosseter, 2 Binney 362, laid down the rule, which has obtained since, that to found an application for a mandamus, the established rule of law is, that there ought to be in all cases a specific legal right, as well as the want of a specific legal remedy,

8 East 219. The courts uniformly refuse such applications, where the plaintiff has another complete remedy. 1 Ld. Ray. 38; 3 Burr 1615; Coup. 378; Doug. 508–526; Commonwealth *v.* Judges, 3 Binney 273; Reading *v.* Commonwealth, 1 Jones 196. Unless it is said that in some cases the remedy be extremely tedious, 2 Stra. 1082; 2 Burr 1045. It is granted only in extraordinary cases, where there would otherwise be a failure of justice. James *v.* Commonwealth, 1 Harris 75. And although demandable of common right, it is grantable at discretion. Commonwealth *v.* Canal Comrs., 2 Pa. R. 518. The existence of a remedy in equity is not a ground for refusing a mandamus. Commonwealth *v.* Allegheny Co., 8 C. 218. And it will be granted where there is a ministerial act to be done, and there is no other specific remedy. *Ibid* 224. "A claimant of an office may proceed by mandamus, although he has another remedy, if it is not specific and adequate to the object in view." Harwood *v.* Marshall, 9 Wis. 83. It will not be granted where a full and adequate remedy exists, through a different proceeding. Commonwealth *v.* Colley Tp., 5 C. 121. A writ of *quo warranto*, we are induced to think, would not give the relator an adequate remedy, for he holds nearly one hundred proxies not acted upon; and in such a contest the number of legal votes cast must determine the election, not the number that *might* be cast. In Strong's case, 20 Pick. 496, the court think both *quo warranto* and mandamus may be applied for, and proceeded in *pari passu.* One to establish the legality of the relator's own election, the other to set aside that of his opponents, and adds that the whole of the authorities, English and American, are much in favor of mandamus, especially in more modern cases.

If we were to turn the relator over to an action at law against the inspectors, it is clear he would have no adequate remedy either in civil or criminal proceedings for himself or the policy-holders whose proxies he holds and whom he represents. The remedy in an equitable proceeding would be long and tedious, even if it were full, and therefore should not exclude the remedy by mandamus. Commonwealth *v.* Allegheny Co., 8 Casey 218. We therefore think that the remedy of the relator is by mandamus.

4. Do the inspectors act in a deliberative and judicial capacity, or ministerial? The charter of the company provides that on the second Monday of January, of each year, an election shall be held for directors, under the inspection of three members, not being directors, appointed by the president (act 27 Dec., 1871, §4). Their duties are to receive the votes of the members, either personally or by proxy (one vote for every policy of insurance), to count the votes, and declare who are elected. They cannot be a *deliberative* body in any sense of the word. The duties are simple, defined, and obligatory under the act of assembly. They are not a *judicial* body, as the supreme court has decided in Commonwealth *v.* Woelper, 3 S. & R. 28, but persons performing ministerial acts. Chief Justice Tilghman, delivering the opinion of the court, says, on page

33, " The inspectors do no more than receive and count the votes. But it is said the inspectors are judges, and may decide the election as they please, by the admission or rejection of votes. *Their office is ministerial rather than judicial.*"

" The charter declares who may vote, and the inspectors are bound by it. To be sure they must, in some cases, exercise their judgment when a question arises on the construction of the charter, but so must every ministerial officer when a question arises on the extent of his powers." " If an inspector refuses a vote, the injured person is not without remedy." Neither is the force of this decision impaired by what Judge Rodgers says in The Commonwealth *v.* McCloskey, 2 R. 373; of Judge Gibson's opinion, for the supreme court in Juker, *et al. v.* The Commonwealth, 8 Harris 496, refers to The Commonwealth *v.* Woelper, without dissent. It can, therefore, be received as establishing the fact that an inspector of elections is a *ministerial officer.* As to when the writ will lie to judicial officers performing ministerial acts. See The State *v.* Eby, 43 Alce. 568; see also The People *v.* Halsey, 53 Barbour 547. 2. As to the sufficiency of the pleadings, if the petition be imperfect, or defective in the averments or insufficient in setting out the injury complained of, it must, on this motion, be quashed. If, on the contrary, the answer of the defendants be evasive, argumentative, or ambiguous, or if it states *conclusions* and *results,* when it should state *facts,* then judgment must be given for the commonwealth. The special circumstances make this a *sui generis* case. The petition avers that The Pennsylvania Central Insurance company is incorporated by law, duly organized, and doing business here; that the relator holds over one hundred proxies of policy-holders of the company, and had a right to vote them on the 13th of January last, under the provisions of the charter; that he offered to vote for directors on that day, and was refused by the inspectors holding the election. These are the material averments of the petition, and in our opinion establishes a *prima facie* case that would entitle him to the writ, unless the return shows a different state of facts.

Having passed upon the petition, we propose to consider the sufficiency of the defendant's return. It is incumbent on them to set out the whole legal facts of their case *in extenso,* in order not only that the court, whose duty it is to declare the law *arising upon those facts,* may have the means of judging of the legality of such excuse, &c. Rex *v.* Staffordshire, 6 A. & E. 84; Tapping on Mandamus 394. The return must not be evasive or contemptuous. Rex *v.* Payn, 6 A. & E. 405; S. C. 1 N. & P. 524; S. C. W. W. & D. 99. Nor frivolous. Rex *v.* Robinson, 8 Mod. 336. Nor nonsensical. Rex *v.* Ouze Bk. Com. 3 A. & E. 544; 10 A. & E 556. The return must be neither inveigling nor hypothetical. Rex *v.* Old Hall Manor, 10 A. & E. 254; Rex *v.* Norwich, Ld. Ray, 1244. The averments of the return must be certain. Rex *v.* London Dock, 5 A. & E. 163. So that all material facts be positively

and distinctly alleged. Rex *v.* Cambridge, 2 T. R., 458. These are a a few of the English cases on that subject. Our own enunciate the same doctrine. Every allegation of a return must be direct and must be stated in the most unqualified manner, not inferentially or argumentatively, but with certainty and plainness. Commonwealth *v.* Commissioners of Allegheny Co. 8 C. 218, per Woodward, J. The return must contain a full and certain answer to all the averments of the petition. Springfield *v.* Hampden, 10 Pick. 59. In The Commonwealth, *ex rel.,* Armstrong *v.* Allegheny Co., 1 Wright 281, Judge Thompson says, "All the portion of the return is obnoxious to the objection of want of certainty in pleading in mandamus proceedings. The fact to show want of good faith in commencing the work *should have been set out.* Instead of this, we have only the respondent's inference from facts not exhibited. This was an inference for the court to draw from the facts, they cannot draw it from the inference of the party, for the facts constituting want of good faith, if they be such, are not averred. The return must set out facts in detail, to enable the court to judge thereof." State *v.* Common Council, 9 Wis. 254. A return should state facts, not evidence. The People *v.* Baker, 35 Barbour, 105 ; State *v.* Bailey, 7 Iowa, 390.

In the present case the respondents say that the proxies offered by the relator were illegal under the authorities just cited. *That* is a conclusion for the court. The facts of the illegality are not stated, except that the proxies were not in accordance with the by law. This by-law is not embodied in the return, but incidentally brought to our notice, and which we propose to examine in its order. Apart from this, we have no means of judging of the legality of the votes thus rejected by them. Even an affidavit of defence to be sufficient, should set forth the facts, not the conclusion, that the defendant has a just and legal defence. Bryan *v.* Harrison, 1 Wr. 233. And a return to a writ of mandamus made in general terms, is decided to be insufficient. Rex *v.* Bristol Dock, 1 G. & D. 289 ; Rex *v.* Ouze Bank Commissioners, 3 A. & E. 544. The allegations in the petition not denied in the return are admitted as true on demurrer. State *v.* Lean, 9 Wis. 279. These authorities show conclusively that in this respect the return is wholly insufficient. But the respondents, further say that they rejected the proxies, because they were informed that they were obtained through false representations. If this were even so, Mr. Grier would be amenable only to the policy-holders whose proxies he holds, and as they do not complain, it is difficult to understand how the inspectors are affected by acts outside of their ministerial duty. It is not alleged that any party in interest has authorized the inspectors to hear, investigate and determine alleged frauds, and thus to transcend the duties of their appointment. As to the signers of the proxies, the inspectors are a self-constituted committee acting without consent, without notice, interfering with vested rights, and usurping judicial power. The fallacy of this position cannot fail to be apparent.

They say also, that they refused to receive the proxies, because they were not executed and attested in accordance with the by-laws of the company, *and that there was no proof offered* that the signatures were genuine.  They don't say the signatures were not genuine, or that they believed that they were not genuine, or that they were even informed so, and therefore the rejection of votes for this latter reason is a mere pretext for a violation of their plain duty.  It needs no comment.  The by-law referred to, was passed the very day the election was held, and required proxies in the form of a power of attorney, acknowledged before a justice of the peace, and attested by the secretary of company ; and as the relator held proxies previously executed, and there was not time to change them, the rejection of them involved the disfranchisement of those policy-holders.  Hence, it is contended, that if the directors had any authority to attach conditions to proxies, it must have a prospective operation, not a retrospective one.  But if they have any authority to attach conditions to the right of voting, *other than those* contained in their charter, there would be nothing to prevent them next year, and immediately before holding the election to pass other by-laws with new conditions and without notice, and thus perpetuate their own power without redress.  Many of the policy-holders live in adjoining counties, and if they had previously given proxies, the enforcement of the by-law would work manifest injustice to them.

But the charter gives to every policy-holder of the company a vote for every policy of insurance held by him, either in person or by proxy. Can this right be infringed upon by a by-law of the company ?  This is the pivot upon which this whole case turns.  It is established law, *that no constitutional qualification of a voter can be abridged, added to or altered by the legislature.*  Page *v.* Allen, 8 P. F. S. 338 ; Thompson *v.* Ewing, 1 Brew. 103 ; State *v.* Adams, 2 Stew. 239.  *And a right conferred by the constitution is beyond the reach of legislative interference.*  McCafferty *v.* Guyer, 9 P. F. S. 109.  *The expression of one thing in the constitution is the exclusion of things not expressed.*  Page *v.* Allen, 8 P. F. S. 338.  The constitution is a limitation of the power of the legislature.  The charter is the source of the power of the directors, and the reason for restricting their action applies with more force to the latter than the former.  Simply because the legislature may act in all matters where they are not prohibited, but the directors can only act in the way specified by the charter.  We must construe the charter *strictly*, the constitution may be *liberally construed*. Com. *v.* Hartman, 5 H. 118.  Therefore, if the charter annex no conditions to the right to vote by proxy, such as is here set forth, the directors have no power to make such a by-law, and it must be declared null and void.  This is settled by abundant authority.  Thus, where the charter does not require an oath, a by-law imposing an oath transcends the charter, and such by-law is void.  Rex *v.* Dean and Chapter of Dublin, 1 Stra. 539.  Restricting the right of an officer to a mere casting vote in case of

a tie. McCollough *v.* Annapolis & Elkridge R. R. Co., 4 Gill. 58. Restricting or extending the right of admission or eligibility to office. Rex *v.* Coopers, 7 T. R. 548.

Altering the prescribed mode of election; or imposing new or additional tests or qualifications on members or voters ; delegating the power of laying assessments to the directors, when the charter vests it exclusively in the corporation ; *all such by-laws are void. Ex parte* Winsor, 3 Story 411. Without multiplying authorities upon a proposition so plain and just, we would refer to the case of the People *v.* Tibbets, 4 Cowen 358, where the court held that inspectors had no right to require *other tests* of a voter than those provided in the act of incorporation, and that it was not competent for the directors to pass any by-law at variance with the provisions of the charter. The People *v.* Kip, 4 Cowen 382. See Angell & Ames on Corporations, § 345. See also Evans *v.* Phila. Club, 14 Wr. 107.

Our opinion has been formed from the pleadings ; the depositions have not been examined, and from the view the court takes of the law, we do not think it necessary. In other respects the return is unsatisfactory. It is argumentative, when they assign reasons why the writ should not issue, and when they contend that the relator has another adequate legal remedy ; and obnoxious, when they claim authority which they intimate the court cannot examine. The tone is of doubtful propriety, and open to objection, as they say they proceeded to do the act complained of after the writ was served upon them by the sheriff.

"*For a party making a return to an alternate mandamus must show that he has complied with the order of the writ, to the extent of his ability.*" Selverthorne *v.* Warren R. R. Co., 33 N. J., 173. "The return must be *very minute*, to show why the party did not do what he was commanded." Regena *v.* Southampton, 1 Ellis, B & S. 5, per Crampton and Blackburn, JJ. A few words as to the judgment :

In Rex *v.* St. Luke's Vestrymen, 2 Neville & Manning 464, (28 Eng. Com. Law Rep. 371,) it is decided that when an election is incomplete or irregularly conducted, the writ lies to command an entry of an adjournment of an election meeting, to proceed to complete the election.

So also to compel municipal officers to proceed to a scrutiny of the polls in the election of corporate members. Rex *v.* Ebert, Hardei 262, Tapping on Mand. 232. The court may also set aside an election, but they have no power to declare who are elected. Long Island R. R. Co., 19 Wendell 37.

In this case, to give adequate relief, the judgment of the court should conform to the prayer of the petition, and for that purpose we must require the inspectors to receive the proxies in question, count the votes, and declare who are legally elected directors of the company.

Judgment for the commonwealth.

Hon. *James Ryon* and *John W. Ryon*, Esq., for relator ; Messrs. *Henning, Bickel, O. P. Bechtel* and *Cumming*, contra.