Hawes, J.
The facts affecting the only question presented upon this appeal are few.
The defendants contracted with the plaintiffs for the manufacture of certain cotton and woolen goods, *374 known as Salisbury suitings, to be delivered in April and May, 1883. Defendants refused to accept the goods, or to perform the contract on their part, and this action was brought to recover damages for such failure.
The defendants claim that it was strictly a sale of goods, and that it was within the inhibition of the statute of frauds, as there was no memorandum in writing, and no money was paid on account. The plaintiffs, on the other hand, claim that it was a contract for the manufacture of goods, and therefore not within the provisions of the statute. So far as this particular phase of the case is concerned, there is no conflict of testimony in reference to the conversation that took place between the parties, and as both counsel moved for judgment at the close of the testimony, the one to dismiss the complaint, and the other to direct a verdict, and no request was made to go to the jury on any disputed fact, it must be assumed that all the substantial facts were urged upon, or left with, the court to consider, and the court was clearly right in disposing of it as a question of law. It is proper to add, that the proper disposition is not here questioned by either party.
. The plaintiffs are merchants in this city, and agents of the Essex and Hamilton mills. Their clerk called upon defendants and solicited their orders, showing the sample of the goods. The mills for which plaintiffs were agents, make up a line of goods for the clothing trade, similar to the samples shown, and the different parties purchasing make their selection from these samples of the goods, which are thereafter to be manufactured.
The goods were admittedly not in existence at the time, and although nothing was said about their being manufactured, I think it conclusive that they were to be, and that was the view entertained by the trial *375 judge. The plaintiffs own stock in the manufacturing mills, and represented them in the city. All orders given by plaintiffs were charged directly to them, but they manufactured only the goods which were ordered by the plaintiffs, whose custom it was to obtain orders from merchants in this city, which orders were executed by the mills under direction of the plaintiffs.
These are all the facts which I can glean from the evidence, bearing in any way upon this question, and they are not contradicted by the defendants ? Do these facts thus conceded constitute a sale of the goods, or is it technically an order to manufacture. The question is an important one, in view of the fact admitted upon the argument that nearly all the business between the jobbers in the dry goods trade and their customers who manufactured clothing, is conducted in a similar manner, and their rights and liabilities in their legal aspects are presumably of considerable importance.
This branch of the statute of frauds has given rise to many conflicting decisions, both in England and this country, and the rule governing it cannot be said to be settled even now.
The history of its varying modifications is happily set forth by Chief Justice Daly in Passaic M’f’g Co. v. Hoffman (3 Daly, 495), by Mr. Justice Shepley in Hight v. Ripley (19 Maine, 137), by Chief Justice Shaw in Mixer v. Howarth (21 Pick. 205), and by Mr. Justice Cassoday in a late case in Wisconsin (Meincke v. Falk), reported in 26 Mb. Law J. 510. However interesting this study may be, as a matter of legal history, I deem it of importance only as it may relate to the New York decisions, and from a careful examination, I am of opinion that it will be found that other States have drifted away from the recognized rule as established in the State of New York, and that in the main they have adopted the rule as recognized in England, modified as it has been by *376 the passage of Lord Tenterden’s act (9 George IV. c. 14, § 7). In Sewall v. Fitch (8 Cow. 219), decided in 1828, the court held, that as the goods were not then in solido, and that the contract was for the delivery of nails,' thereafter to be manufactured, it was not within the statute, following the old rule in Towers v. Osborne (1 Str..566), Clayton v. Andrews (4 Burr. 2101), and Rondeau v. Wyatt (2 H. Bl. 63). In Crookshank v. Burrell (18 Johns. 57 [1820]), the court held in the case of a contract to manufacture a wagon, that inasmuch as the thing to be delivered did not exist in any tangible shape,, it was not within the statute, following the case of Cooper v. Elston (7 Term Rep. 14).
The criterion set forth in Stephens v. Santee (51 Barb. 545 [1868]), is whether the work is to be done for the vendor or for the vendee, and if for the latter, it is not within the statute. Such a definition is so indefinite, however, as to furnish but little light on the question. The well known case of Mead v. Case (33 Barb. 202), decided 1860, carried the rule set forth in Sewall v. Fitch (supra), to a very questionable length. The plaintiff stipulated to furnish defendant, at a certain time, a monument, of the value of $200, properly inscribed. The marble was put together, and was then standing in plaintiff’s yard. When finished, the plaintiff tendered the monument, which was declined, and suit was brought to recover the price. Held, that it was not within the statute, on the ground that the monument, as such, was not then in existence. The sole and only test which the court applied to this case was that enunciated in Crookshank v. Burrell (supra), and Sewall v. Fitch (supra). The judge who dissented in that case claimed that all the essential elements.of a monument existed, and he also invoked the Massachusetts rule, as laid down in Mixer v. Howarth (siopra). No case can be imagined which would call for a severer application of the rule, which I condeive gov *377 erns the New York decisions than this case of Mead v. Case.
In Smith v. N. Y. Central R. R. Co. (4 Abb. Ct. App. Dec. 362 [1868]), which involved the construction of a contract to furnish a specified number of cords of fire wood, to be cut from standing trees, the court held, that inasmuch as there was no change in the thing sold and to be delivered, and that the material actually stood in the woods at the time, the contract was within the statute, citing with approval Downs v. Ross (23 Wend. 270), and Garbutt v. Watson (5 Barn. v. Ald. 613).
The case of Parsons v. Loucks (48 N. Y. 17 [1871]), is conclusive upon this question, and holds the case not to be within the statute, solely on the ground that the paper to be delivered was not then in existence. The case of Cooke v. Millard (65 N. Y. 359), re-affirms the doctrine laid down in Parson v. Loucks {supra), and in Smith v. N. Y. Central R. R. Co. (4 Keyes, 200), and unequivocally holds that there must be a sale at the time the contract was made, and not at the time of delivery, and that the sole and only criterion of the validity of the sale as affected by the statute of frauds, is whether the chattel to be delivered was, or was not in existence at the time the contract of sale was made. If it was, and work was to be done upon it, then the contract fell within the inhibition of the statute, but otherwise, if the chattel was not in existence. It will be noticed that all these cases were decided, not upon the theory that they were executory contracts, as suggested in Towers v. Osborne {supra), and which was covered by Lord Tenterden’s act, but because the goods were not then in existence, and solely on that ground. That there may be circumstances which will bring the case without the statute, when the substance to be delivered was in existence in some form, is doubtless true, and these instances have *378 called forth much discrimination and learning, but I think that there is no authoritative decision to bé found in this State, which holds that the case is within the statute, if this generic and fundamental element is wanting.
I have referred to these cases at length, in view of the fact, that the counsel for the respondents claims that the ruling in Passaic M’f’g Co. v. Hoffman (3 Daly, 495), which must govern us, holds that where the contract is for an article coming under the general designation of goods, wares and merchandise, and is made by one who. manufactures and sells to all who traffic in it, the quantity required, and the price being agreed upon, it is a contract of sale within the statute; without regard to the fact that the article to be delivered was not then in existence. Referring to this case, the court of appeals in Cooke v. Millard {supra), says, “While the case (Passaic M’f'g Co. v. Hoffman) appears to fall within the rule of Parsons v. Loucks, the eminent judge, who wrote an elaborate opinion expressing the views of the court, would seem to rely upon the Massachusetts rule, rather than our own. Whatever view might be entertained of the soundness of that distinction, it is now too late to adopt it here, and the case cannot be sustained on that ground.”
The result reached by the court in the case of Passaic M’ffg Co. v. Hoffman, is the only determining element which governs us, and viewed in .that phase no such principle is established. It is true that it is spoken of approvingly, but I think it must be held to have been involved in the historical exegesis of the law affecting the statute of frauds, and that it was only favorably spoken of in that connection, and was in no sense an essential element in the determination of the case, and would not, therefore, be of any binding force. I am quite sure, moreover, that it was not so *379 designed; and a careful analysis of the opinion does not justify a conclusion that such was its purpose.
In view, therefore, of the well settled rule of law in this State, that the goods to be delivered must be in tangible existence, or, more strictly, in return natura, as defined by Lord Ellenborough, at the time of the contract of sale, in order to bring it within the statute, it is quite clear that the action herein is a contract for work, labor and services, and not a sale of goods, inasmuch as we find, as matter of fact, that the suitings in question were not in existence at the time of the contract,'but were to be manufactured by the plaintiffs, and were to be delivered by them in April and May, succeeding February 10, the date of the contract.
It is claimed, however, that inasmuch as the goods were to be manufactured at the Essex Mills, and not by Joy, Langdon & Co. personally, the contract was a contract of sale within the decision of Millar v. Fitzgibbons, 9 Daly, 506.
Without discussing the latter case, it is quite clear to us, that, so far as regards the defendants, the contract to manufacture was made directly with Joy, Langdon & Co. It is true, that the mills in which they were part owners and virtual managers, performed the manual labor of making the cotton and wool into suitings, and it in nowise affects the question as to what arrangements existed between them inter sese.
The pertinent, and in fact only inquiry which can be made in this connection, is whether the defendants relied upon Joy, Langdon & Co. in the manufacture of the goods. Would the defendants hold Joy, Langdon & Co. responsible in this connection, or would they hold their employees \ Clearly there was no privity existing between the defendants and the agents of the plaintiffs, and no reliance whatever was placed upon their skill or capacity in the making of them, and I fail wholly to seé what rights have intervened in their *380 behalf respecting the execution of this order. To say that every person who takes an order to manufacture goods shall personally do all the work connected with, it, reduces the argument to an absurdity. Shall it avail the party who gives the order to inquire what particular relation exists between the employer and each of his employees, and possibly claim, on the one hand, that he was bound to his contract only when the principal perfortned, with his own hands, all the work upon the goods; or on the other, that some of the employees were hired by the day, and others were hired by contract, and that there was no liability in the latter case, especially, if bills for' such services were rendered to the principal ?
To discuss such a proposition seriously is a difficult matter, and the case of Millar v. Fitzgibbons in no sense justifies the view entertained by the respondent. It is doubtless true that the plaintiff in this case, as in every other where it is claimed to hold a defendant to a contract for work, labor and services, must show that there was a contract for performance existing between him and defendant, and that the defendant looked to him for its execution, and that the plaintiff on the other hand stipulated to do the work, and agreed to be responsible for it; and that is all that such a contract is capable of meaning. If the plaintiffs in this case had chosen to erect machinery in their own store, and employ men to manufacture the suitings there, or if they preferred to do it at the Essex Mills at Amesbury in the State of Massachusetts, of which they are joint owners, or anywhere else in this country or in Europe, I fail to see how it in any way concerns the defendants. It is absurd to-suppose that the defendants made the contract of manufacture on the assumption that W. Joy and W. Langdon and W. Grookin, were to manually perform their work, but they did rely, and they had legal reason to rely upon *381 them as parties who held themselves out as-responsible for its proper execution, and who assumed the liability of manufacture so far as these defendants were concerned. They, and they alone, were chargeable in damages to the defendants for any failure to carry out this contract and to properly execute the order intrusted to them. If such is the fact, and I see no legal escape from it, it follows, in my opinion, as an inevitable sequence that Joy, Langdon & Co., are the actual manufacturers so far as these defendants are concerned, and for all the purposes of this action.
It does not rest with this court to discuss the case of Millar v. Fitzgibbons, although the well known liberality of the justice who wrote the opinion, would cordially invite any honest dissent, and I am emboldened to say that the dictum which has apparently furnished a basis for the head-note creates a fair basis for discussion, if the strictest construction possible should be given to it, and in that aspect the syllabus is possibly misleading. But all that the learned justice held in the case of Millar v. Fitzgibbons, and it is the only phase of the case which is controlling here, was, that it was the duty of the plain tiffs-to show that Millar & Co. were to manufacture the goods, and that as there was no proof of that description in the case, the statute must necessarily be applied to the contract. This ruling is in no respect in the respondent’s favor in the case at bar, for if, as matter of fact, the plaintiffs had failed to show that the goods were to be manufactured by them, the statute would clearly apply to the contract. That they were to perform the manual labor themselves in no respect follows either in this case or in that of Millar v. Fitzgibbons, and we find upon the evidence as a fact, in every legal aspect of the case, that the plaintiffs, herein contracted to manufacture and did manufacture the goods in question.
In view of the test which is to be applied to these *382 cases, as enunciated by the New York decisions, and in-further view of the facts as developed by the evidence affecting the question of manufacture on the part of the plaintiffs, we are of the opinion that the case does' not come within the provisions of the statute of frauds, and that a cause of action exists in behalf of the plaintiffs.
The judgment must be reversed, and a new trial ordered, with costs to appellants to abide the event.
Hyatt and Hall, JJ., concurred.